IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) No. 20-cr-393-WSS |
| MARK D. LAY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE**

AND NOW comes Defendant Mark D. Lay, by and through his attorneys Michael A. Comber and S. Wesley Gorman, Esquires, and the law firm of Reisinger Comber & Miller, LLC, and respectfully submits this Motion for Early Termination of Supervised Release. Mr. Lay's good conduct and the interest of justice warrant termination of his term of supervised release pursuant to 18 U.S.C. § 3583(e)(1).

**I.  Facts**

Mr. Lay began to serve his term of supervised release on December 18, 2018; the term is expected to end on December 17, 2021. On March 13, 2020, jurisdiction over his term of supervised release was transferred to the Western District of Pennsylvania, the district of Mr. Lay's home and family. Under supervision, Mr. Lay has demonstrated exemplary conduct and has complied with all conditions of his release.

Mr. Lay's supervised release follows a term of imprisonment imposed after conviction in the Northern District of Ohio of four counts related to investment advisory fraud. We believe a fair summary of the offense conduct, and the parties' respective characterizations of it, is captured

1

in the sentencing court's "Memorandum Opinion Analyzing Sentencing Factors." *United States v. Lay*, Case No. 1:07-cr-00339-DDD, Document 181, pages 21-24 ("Judge Dowd's Sentencing Memorandum"). Although Mr. Lay contested the charges at trial, his conduct post-conviction has been immaculate. He served his twelve-year term of incarceration without incident, and has since served his term of supervised release without incident or violation.

In fact, Mr. Lay has far exceeded mere compliance. Without pretense or expectation, he has made exceptional contributions to his Aliquippa community, and he has been recognized for it. Among other things, Mr. Lay was invited to speak at Career Day at Aliquippa High School in September of 2018, and read and spoke to fifth graders at Aliquippa Elementary School in February of 2020. He has spearheaded a voter registration drive (February 2020), facilitated a community health and wellness initiative through his church (November 2019), and very recently contributed to the Eat Initiative by participating in the Blessing Box Distribution (October 2020). With various members of the Bureau of Prisons staff, he worked on programs to assist both at-risk children and incarcerated individuals stay on the straight and narrow or, as the case may be, successfully reintegrate into society; with members of the Energy Innovation Center, he participated in a panel discussing challenges facing members of his community, which, as the Court knows, now includes the community of rehabilitated convicts. He has done all of this *after* being convicted of a crime and serving a lengthy sentence; despite that, this groups invited and welcomed his participation.

In every way, Mr. Lay has tried to use his conviction and sentence for good, particularly in his local community. For that reason – and, of course, his basketball talent and hard work – he was in February of 2020 inducted into the Pittsburgh Basketball Hall of Fame. He would

probably tell the Court that his induction may have lowered the average basketball talent among the honorees; they would probably tell the Court that he raised by far their average community impact and good character.

## II.     Argument

A district court may terminate an individual's supervised release obligations "at any time after the expiration of one year . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). In evaluating whether early termination is warranted, the court considers many of the factors set forth in 18 U.S.C. § 3553(a). *Id.* The decision is "discretionary," and the Third Circuit has recently decided that "a district court need not find that an exceptional, extraordinary, new, or unforeseen circumstance warrants early termination of a term of supervised release before granting a motion under 18 U.S.C. § 3583(e)(1)." *United States v. Melvin*, 978 F.3d 49, 53 (3d Cir. 2020); *see also id.* ("[W]e disavow any suggestion that new or unforeseen circumstances must be shown.").

Mr. Lay's conduct, as good and exceptional as it has been, exceeds the required standard for early termination of a term of supervised release. *See, e.g.*, *United States v. Kay*, 283 Fed. Appx. 944, 946 (3d Cir. 2008) ("[E]xceptionally good behavior by the defendant[] could serve as a basis for a District Court's discretionary decision to modify supervised release."). Mr. Lay contributes broadly and deeply to his community – to local schools, environmental and civic interests, youth and felons, minority groups, and to anyone in need. While on supervised release, Mr. Lay – despite his conviction and sentence – was recognized by and inducted into the Pittsburgh Basketball Hall of Fame. Every school and group that has invited and

welcomed his participation in their programs has recognized that he has demonstrated the exceptional ability not to let his felon status hold him back, but to put it to its best and highest use wherever and whenever he can.

Moreover, the factors in 3553(a) support early termination. Considering "the nature and circumstances of the offense," it is worth noting that although the amount of loss determined by the sentencing court is high, this amount did not at all flow to Mr. Lay for his financial benefit. As the sentencing court noted, "the defendant did not convert to his own use the monies . . . other than his fees. There is no evidence before the Court that the defendant derived any income or profited in any manner from his conduct in over-leveraging that led to the massive loss incurred." Judge Dowd's Sentencing Memorandum, at 32.

Mr. Lay's "history and characteristics" are the same now as they were then – the sentencing court noted, among other things, "the high esteem with which the defendant is held in his community," "the defendant's exemplary conduct with his children," "the defendant, as a member of the minority community, was able to obtain a college degree from an outstanding college," and the defendant had "considerable business accomplishments." *Id.* at 31-32. His contributions to society since being sentenced, as described above, are proof that these good works were not aberrations, but a central part of who Mr. Lay is as a person.

As to deterrence and protection of the public, we are not aware of any evidence or suggestion that releasing Mr. Lay from his supervised release obligations one year before that term is set to expire would present any danger to anyone. The sentencing court determined, and we believe it remains true today, that the incarcerative sentence "does afford adequate deterrence to the possibility of additional criminal conduct by the defendant and that the defendant's

sentence of 144 months will protect the public from further crimes of the defendant." *Id.* at 34. That sentence has been served, and the evidence since then has demonstrated that the sentencing court's assessment was accurate. Mr. Lay, having served that sentence – "the first time that the defendant will suffer a total change in his life experience" – presents no additional danger now that he nears the final third of his term of supervised release. *Id.*

Finally, Mr. Lay acknowledges "the need to provide restitution to" the Ohio Bureau of Workers' Compensation ("OBWC"). 18 U.S.C. § 3553(a)(7). The restitution amount – $216,967,084.76 – is the loss attributed to OBWC as a result of the performance of the fund managed by Mr. Lay's former business. In no way does Mr. Lay mean to diminish the harm that this loss may have caused the OBWC or its beneficiaries, but for context, the OBWC manages more than $29 billion in assets, is the largest state-operated provider of workers' compensation in the United States, and has gratefully been able to distribute billions of dollars in COVID-19 related support payments in the last month. Regardless, Mr. Lay has been making restitution payments to the utmost of his ability, and will continue to do so for as long as necessary to satisfy the obligation and demonstrate his understanding of its importance. These circumstances, in our view, do not suggest that in order to assure restitution payments it is necessary to continue to impose supervision obligations on Mr. Lay.

**III.    Conclusion**

For the foregoing reasons, because Mr. Lay has demonstrated good conduct and the interest of justice supports it, Mr. Lay respectfully asks the Court to grant this Motion and terminate his term of supervised release pursuant to 18 U.S.C. § 3582(e)(1).

|  |  |
|---|---|
| Dated: November 24, 2020* | Respectfully submitted,<br><br>*/s/ Michael A. Comber*<br>Michael A. Comber, Esquire<br>PA ID No. 81951<br>S. Wesley Gorman<br>PA ID No. 325565<br>Reisinger Comber & Miller, LLC<br>436 Seventh Avenue<br>Pittsburgh, PA  15219-1827<br>(412) 894-1380<br>wgorman@reisingercomber.com |

\* Date originally emailed to Clerk's Office; case number then assigned on December 21, 2020, and thereafter submitted on electronic docket on December 22, 2020.